UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ZOE R., on behalf of Y.N.P.,

                                    **Plaintiff,**                                20-CV-1022Sr

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                                  **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #12.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on March 16, 2017, on behalf of her daughter, age 4, due to attention-deficit/hyperactivity disorder, obsessive compulsive disorder, bipolar disorder, speech and language disorder, history of ear tube placement and obesity. Dkt. #8, pp.63-64.

On November 20, 2018, plaintiff appeared with counsel and testified at an administrative hearing before Administrative Law Judge ("ALJ"),Dale Black-Pennington. Dkt. #8, pp.41-60. Plaintiff testified that her six-year-old daughter was in first grade and lived with her, her father, two older and two younger twin siblings  Dkt. #8, pp.46-48. Plaintiff testified that the child does not follow directions and does not follow rules. Dkt. #8, p.50. She does not get along with her siblings and does not like to share or play with either her siblings or other children. Dkt. #8, p.51. She hits, bites, pushes, pulls hair and once threatened to kill her brother with scissors. Dkt. #8, pp.53-54. She screams and throws tantrums when she is asked to clean up after herself. Dkt. #8, p.58. She has no difficulty attending to her personal hygiene. Dkt. #8, pp.53-54. She has no physical limitations. Dkt. #8, p.60.

The ALJ rendered a decision that plaintiff was not disabled on April 8, 2019. Dkt. #8, pp.18-36. The Appeals Council denied review on June 5, 2020. Dkt. #8, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on August 4, 2020. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner must follow a three-step sequential evaluation to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 ("the Listings"). 20 C.F.R. § 416.924(d). To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending

and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a).

A child has a marked limitation when the impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A child has an extreme limitation when the impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(3)(i). A marked limitation is the equivalent of functioning expected on standardized testing with scores that are at least two standard deviations below the mean, while an extreme limitation is three standard deviations or more below the mean. 20 C.F.R. § 416.926a(e)(2)(i)&(e)(3)(i). As a frame of reference, the percentage of a group that scores two or more standard deviations below the mean on a standardized test represents only 2.3% of the population, which would be equivalent to the two worst performing children in a group of 100. *Johnson v. Astrue*, 563 F. Supp.2d 444, 458 (S.D.N.Y. 2008). In a group of 1,000 children, only the worst performing child would be considered to have an extreme limitation. *Id.*

In the instant case, the ALJ made the following findings with regard to the three-step sequential evaluation: (1) the child had not engaged in substantial gainful

activity since the application date of March 16, 2017; (2) the child's attention-deficit/hyperactivity disorder, obsessive compulsive disorder, bipolar disorder, speech and language disorder, history of ear tube placement and obesity constitute severe impairments; and (3) the child's impairments did not meet or medically or functionally equal any listed impairment, and the child was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.22-33. More specifically, the ALJ determined that the child exhibited: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in ability to care for herself; and (6) less than marked limitation in health and physical well-being. Dkt. #6, pp. 26-33.

Plaintiff argues that the ALJ's determination that plaintiff exhibited less than marked limitations in the functional domains of Acquiring and Using Information and Interacting and Relating with Others is not supported by substantial evidence. Dkt. #11-1, pp.16-29. More specifically, plaintiff argues that the ALJ failed to properly account for the multiple services and structured environment supporting the child and improperly focused upon positive information while ignoring deficits. Dkt. #11-1, pp.16-25. For example, plaintiff argues that the ALJ failed to recognized that the child exhibited daily serious problems in her ability to comprehend, read and recall learned information despite her placement in a 6:1:1 setting. Dkt. #11-1, p.17. Even in such a structured setting, with counseling fives times a week for up to two hours per day, plaintiff frequently displayed aggressive and disruptive behavior. Dkt. #11-1, pp.25-28.

The Commissioner responds that the ALJ appropriately considered the evidence, including the supportive services plaintiff was receiving, and that substantial evidence supports the ALJ's determination that plaintiff's limitations did not rise to the level of marked or extreme. Dkt. #13-1, pp.8-13.

Plaintiff replies that the ALJ failed to compare the child's functioning to other same-aged students and cherry-picked solitary examples of the child's success while ignoring consistent and significant examples of the child' difficulties. Dkt. #14, pp.1-3. Plaintiff reiterates that the ALJ's evaluation of functional equivalency does not account to the child's need for a highly structured environment. Dkt. #14, p.3.

SSA regulations require an ALJ to consider "the effects of structured or supportive settings" upon a child's ability to initiate, sustain and complete activities. 20 C.F.R. § 416.924a(b)(5). The regulations recognize that a structured or supportive setting may minimize signs and symptoms of a child's impairment and help improve functioning while the child is in that environment, by the child's symptoms and functional limitations may worsen outside of such a setting. 20 C.F.R. § 416.924a(b)(iv)(C). Thus, the ALJ must consider whether the child would be able to function at an adequate level without the structured or supportive setting. *Id.; See Archer v. Astrue,* 910 F. Supp.2d 411, 427 (N.D.N.Y. 2012) (Although the hearing officer need not make explicit reference to the effects of a structured or supportive setting in order to be deemed to have sufficiently considered them, this district has typically elected to remand when it is evident that the hearing officer did not consider this factor).

The ALJ recognized that the child was subject to an Individualized Education Plan ("IEP"), and behavioral plan and received school counseling. Dkt. #8, pp.26-27. The ALJ also recognized that the child was unable to achieve IEP goals without a considerable amount of consistent adult support. Dkt. #8, p.26. Thus, the ALJ did consider the supportive services the child was receiving. However, the ALJ also noted teacher comments suggesting that progress toward goals was stalled by the child's significant absences and tardiness and the lack of follow-through from parents in exploring medication options or consistent counseling outside of school. Dkt. #8, pp.26-27; *See* Dkt. #8, p. 262 (academically and behaviorally, child started out the school year strong and was making progress, but child has poor attendance that is impacting academics and behaviors in school; as of 5/3/2018, child has 38 absences and 13 tardy days); Dkt. #8, pp.289 & 295 (misses school often but not due to illness; absent 40 days during 2017-2018 school year and was often late during 2016-2017 school year). The teacher also noted that the child's home is very unstable with no parental follow through to help the kids. Dkt. #8, p.295.

Although teachers are not medical sources and their opinions cannot establish the existence of a medically determinable impairment, the ALJ is permitted to consider information provided by such other sources and weigh their opinions regarding a child's limitations and functioning. SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). Given their close interaction with students on a regular basis, teachers are considered valuable sources of evidence for assessing the severity of a child's impairment and it's affect on the child's ability to function. *Id.* In assessing the weight to

afford such opinions, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03P, 2006 WL 2329939, at *5.

The ALJ determined that the opinions of the child's teachers, Ms. Powell and Ms. Hock, were entitled to significant consideration. Dkt. #8, p.29. Ms. Hock, the child's teacher for the 2017-2018 school year, reported that relative to same-aged, unimpaired children who are in regular classes, the child had a serious problem[1] reading and comprehending written material; expressing ideas in written form; recalling and applying previously learned material; and applying problem-solving skills in class discussions. Dkt. #8, pp.289-290. Ms. Powell, the child's teacher for the prior year, noted obvious/moderate problems with respect to the child's ability to apply problem-solving skills in class discussions. Dkt. #8, p.30. Testing conducted in March of 2017 by school psychologist Carly Fabiny, M.S./C.A.S., placed the child solidly in the average range for verbal and nonverbal skills when Spanish and English were used together. Dkt. #8, pp.166 & 171. Therapist Elizabeth Baressi, M.S., noted in April of 2017 that the child "appears very intelligent but is hindered in her academic progress by her maladaptive behaviors." Dkt. #8, p.509. Her teachers reported that academically, her

---

[1] The rating key ranges from (1) No problem; (2) A slight problem; (3) A moderate or obvious problem; (4) A serious problem; and (5) a very serious problem. Dkt. #8, pp.228, 230, 290 & 292 .

skills were developing well and that she is bright and savvy and has great language skills, using Spanish equally well with bilingual classroom aides. Dkt. #8, pp.165 & 171. The child's IEP for the 2018-2019 school year noted that the child was "a very bright little girl." Dkt. #8, p.263. In 2019, the consulting psychologist, Christine Ransom, Ph.D., observed the child, then 7 years old, to be able to count backwards from 20; do simple calculations and serial threes without error; remember three out of three objects immediately and after five minutes; remember five digits forward and three digits backward; and remember adequate detail about her own past personal history. Dkt. #8, p.528. Dr. Ransom opined that the child's intellectual functioning appeared to be average. Dkt. #8, p.528. The ALJ afforded Dr. Ransom's opinion some weight, as she is a specialist who had examined the child and her opinion was generally consistent with the other evidence of record. See *Conlin ex. rel. N.T.C.B. v. Colvin*, 111 F. Supp.3d 376, 388 (W.D.N.Y. 2015) (As qualified experts in the evaluation of medical issues in social security disability claims, the opinions of State Agency medical and psychological consultants physicians' opinions may constitute substantial evidence and may be relied upon if they are consistent with the record as a whole). Thus, substantial evidence supports the ALJ's determination that the child's limitations in acquiring and using information were less than marked.

In the realm of Interacting and Relating with Others, the ALJ noted that Ms. Powell reported severe behavior issues at the beginning of the 2016-2017 school year, including aggression, destroying property, running away from adults, inappropriate language and other unsafe behaviors. Dkt. #8, p.234. However, Ms. Powell reported

that the child's behavior had improved a lot since beginning counseling services. Dkt. #8, p.234. Ms. Powell reported that the child had a serious problem, on a daily basis, playing cooperatively with other children, making and keeping friends, seeking attention appropriately and respecting and obeying adults in authority. Dkt. #8, p.230. The next year, Ms. Hock reported no more than moderate problems on a daily basis, explaining that sometimes there is no problem; other times the child has a very difficult time. Dkt. #8, p.292. Ms. Fabiny's Psychological Counseling Evaluation, dated May 8, 2017, sought to continue counseling services due to disruptive behaviors, including defiance, inappropriate interactions with peers and difficulty focusing in large group settings, noting that the child continued to display aggressive behavior, such as kicking, hitting or biting, approximately 3 times per week. Dkt. #8, p.284. The child's IEP for the 2018-2019 school year set a goal for more consistent positive behavior, but noted that "[s]he really is a sweet girl." Dkt. #8, p.264. Plaintiff reported to the child's primary care physician on January 24, 2018 that the child was cooperative/not oppositional and had no behavior or attention problems. Dkt. #8, p.481. Plaintiff reported to Dr. Ransom that the child gets along well with authority figures, siblings and peers most of the time. Dkt. #8, p.526. Dr. Ransom observed that the child was cooperative and socially appropriate with good expressive and receptive language skills, coherent and goal-directed thought processes and neutral mood. Dkt. #8, pp. 526.  Dr. Ransom opined that the child would have mild, episodic difficulty maintaining appropriate social behavior and interacting adequately with peers and adults. Dkt. #8, p.528. Thus, substantial evidence supports the ALJ's determination that the child's limitations in interacting and relating with others was less than marked.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #11), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #13), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**July 30, 2021**

                                              S/ H. Kenneth Schroeder, Jr.
                                              **H. KENNETH SCHROEDER, JR.**
                                              **United States Magistrate Judge**